UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
MILTON STEIN by RITA STEIN, Executrix,
of the Estate of MILTON STEIN, and RITA
STEIN, individually

                 Plaintiffs,    <u>MEMORANDUM AND ORDER</u>
                                   06-CV-5522 (JS)(WDW)

     - against -

COUNTY OF NASSAU, OFFICER PAUL
BARTHELSON, OFFICER JAMES WHITTAKER,
AMBULANCE MEDICAL TECHNICIAN DIOMEDES
DIAZ, AND OFFICER ANTHONY D'ALTO,

                 Defendants.
--------------------------------------X
APPEARANCES:
For Plaintiffs:      Rita Stein, Esq.
                     200 Old Country Road, Suite 590
                     Mineola, NY 11501

For Defendants:      Donna A. Napolitano, Esq.
                     Office of the Nassau County Attorney
                     One West Street
                     Mineola, NY 11501

SEYBERT, District Judge:

      Pending before the Court is Defendants' motion for

summary judgment. For the foregoing reasons, that motion is

GRANTED IN PART AND DENIED IN PART.

<u>BACKGROUND</u>

      Plaintiff Rita Stein is the widow of Plaintiff Milton

Stein, and appears on behalf of herself and in her capacity as the

Executrix of Milton Stein's Estate. On or about May 15, 1990, Mr.

Stein executed a health care proxy pursuant to New York Public

Health Law § 2981, designating Mrs. Stein as his health care agent

authorized to make health care decisions on his behalf should he

become incapacitated. Pl. Local Rule 56.1 Statement ("Pl. Stmt.")

¶¶ 14-15; Pl. Opp. Br. at 4.

On or about October 2, 2005, Mr. Stein was admitted to North Shore University Hospital ("NSUH"). Pl. Opp. Br. at 4. After extensive testing, his doctor determined that he had metastatic prostate cancer. Id. NSUH released Mr. Stein on October 7, 2005. Defendants' Local Rule 56.1 Statement ("Def. Stmt.") ¶ 1. Throughout the next day, October 8, 2005, Mr. Stein became less and less responsive. Id. at ¶ 2. Mrs. Stein made no attempt to contact Mr. Stein's primary care physician at any time on October 8, 2005, while Mr. Stein's condition continued to worsen. Id. at ¶ 5. But around 10:47 that night, a 911 call was placed from the Stein residence. Id. at ¶ 6.

Within a few minutes, Defendant Police Officers Paul Barthelson, James Whittaker, and James D'Alto arrived at the scene. Id. at ¶¶ 7, 8. Around 10:58 p.m., Defendant Ambulance Medical Technician Diomedes Diaz arrived. Id. at ¶ 9. Mrs. Stein requested that Defendants take Mr. Stein to NSUH, the hospital he had just been released from, and the location of his doctors and medical records. Pl. Stmt. ¶¶ 13, 17. The Individual Defendants refused, and instead insisted on taking Mr. Stein to Winthrop University Hospital ("Winthrop"). Pl. Stmt. ¶ 18. Winthrop is approximately 3.44 miles away from the Stein residence, and a 9 minute ride by car. Def. Stmt. ¶ 14; Pl. Stmt. ¶ 13. NSUH is 6.72 miles away, but only a 10 minute ride by car. Def. Stmt. ¶ 15; Pl.

Stmt. ¶ 13. Defendants contend that, because Winthrop was closer to the Stein residence, it was the closest "appropriate" medical facility. Def. Stmt. ¶ 11. Plaintiffs argue that the presence of Mr. Stein's doctors and medical records, when combined with the small difference in travel time, rendered NSUH the closest "appropriate" medical facility.

Mrs. Stein advised the Individual Defendants that she was Mr. Stein's health care agent, and thus was authorized to make medical decisions on his behalf given his incapacitation. Def. Stmt. ¶ 12. The Individual Defendants refused to honor Mrs. Stein's status as Mr. Stein's health care agent, even though Mrs. Stein showed them the duly executed proxy designating her as such. Pl. Stmt. ¶¶ 15, 19. During his deposition, Defendant Diaz testified that Nassau County instructed him not to honor health care proxies. Pl. Stmt. ¶ 20. Plaintiffs contend that health care proxies are always valid, regardless of the setting. Pl. Stmt. ¶ 12. Defendants contend that health care proxies are "not valid in a pre-hospital setting." Def. Stmt. ¶ 12. It is apparently uncontested that, if Mr. Stein had the capacity to express a hospital preference himself, the Defendants would have had to comply with that request unless "contraindicated by state, regional or system/service protocol or the assessment by a certified EMS provider shows that complying with [Mr. Stein's] request would be injurious or cause further harm to [him]." New York State,

Department of Health, Bureau of Emergency Medical Services, Policy Statement No. 98-15 ("Policy Statement 98-15"). In such cases, the EMT must "fully document" the request, and the reasons for not complying with it. Id.

Without Mrs. Stein's consent and over her objection, Defendant Barthelson lifted Mrs. Stein off the floor and carried her out of the Steins' bedroom. Pl. Stmt. ¶ 21. Mrs. Stein concedes that she "intentionally attempted to obstruct the Defendants from taking Milton Stein out of the house." Pl. Opp. Br. at 20. But Mrs. Stein claims that she was entitled to do so, because Defendants were ignoring her instructions as Mr. Stein's health care agent.

Mr. Stein was then taken to Winthrop, where he stayed for five days before being transferred to NSUH. While at Winthrop, Mr. Stein was subjected to invasive tests and x-rays that were unnecessary, because NSUH had already performed them and had the results in their records. Amend. Compl. ¶ 32. During his time at Winthrop, Mr. Stein did not receive metastatic prostate cancer treatments. Amend. Compl. ¶ 90. These treatments resumed after Mr. Stein was transferred to NSUH. Amend. Compl. ¶ 91.

Plaintiffs' First Amended Complaint asserts 11 causes of action predicated on the events that took place on October 8, 2005. The first 4 causes of action seek relief predicated on Defendants' decision to remove Mr. Stein from his house and take him to

Winthrop, asserting that this conduct violated Mr. Stein's rights under 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments to the Constitution. Causes of action 5 through 8 seek relief predicated on Defendant Barthelson's decision to lift Mrs. Stein up and remove her from the Stein's bedroom, asserting that this conduct violated Mrs. Stein's rights under § 1983 and the Fourth and Fourteenth Amendments to the Constitution. The ninth cause of action seeks similar relief, predicated on a theory that Defendant Barthelson's conduct constituted an "assault" upon Mrs. Stein.[1] The tenth cause of action appears to seek relief deriving from Defendants failure to honor the health care proxy. And the eleventh cause of action alleges that Defendants were negligent in taking Mr. Stein to Winthrop instead of NSUH, because Winthrop's unfamiliarity with Mr. Stein's condition prevented Mr. Stein from receiving metastatic prostate cancer treatment for five days.

---

[1] Mrs. Stein appears to describe a battery as well as an assault. See Fugazy v. Corbetta, 34 A.D.3d 728, 729, 825 N.Y.S.2d 120, 122 (2d Dep't 2006). Ordinarily, the Court construes a pro se litigant's pleadings liberally. But because Mrs. Stein is an attorney, this rule does not apply. See Davey v. Jones, 06-CV-4206, 2008 WL 5061631, *3 n. 6 (S.D.N.Y. Dec. 1, 2008). Consequently, the Court strictly reads Mrs. Stein's ninth cause of action as seeking relief for an alleged assault ("physical conduct" that creates "imminent apprehension of harmful contact"), not an alleged battery ("bodily contact, made with intent, and offensive in nature"). Fugazy, 825 N.Y.S.2d at 122.

<u>DISCUSSION</u>

I.   <u>Standard of Review on Summary Judgment</u>

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997); <u>see</u> <u>also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>McLee</u>, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000).  "Mere

6

conclusory allegations or denials will not suffice." <u>William v.</u>
<u>Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986).  Similarly, "unsupported
allegations do not create a material issue of fact." <u>Weinstock</u>,
224 F.3d at 41.

II.  <u>Are Health Care Proxy Agreements Valid Outside of a</u>
     <u>Hospital Setting?</u>

It is undisputed that Plaintiffs' claims depend upon the
validity of Mrs. Stein's authority to act as Mr. Stein's health
care agent at the time of Defendants' conduct.  Defendants argue
that health care agents have authority only within hospital-like
settings (such as hospitals, health clinics and nursing homes).
Because the conduct alleged occurred outside of a hospital,
Defendants contend that Mrs. Stein was not authorized to direct the
Defendants to take Mr. Stein to NSUH instead of Winthrop.  Thus,
Defendants argue, they had near total discretion concerning Mr.
Stein's treatment, and consequently did not violate Mr. Stein's
constitutional rights by taking him to Winthrop.

Plaintiffs, on the other hand, contend that Mrs. Stein's
status as Mr. Stein's health care agent applied everywhere,
including within the Steins' own home.  Thus, Plaintiffs contend,
Mrs. Stein stepped into Mr. Stein's shoes and inherited his
authority under New York law to request a specific hospital, which
Defendants must comply with unless "contraindicated by state,
regional or system/service protocol or the assessment by a
certified EMS provider" that complying with the request "would be

injurious or cause further harm." Policy Statement 98-15. Arguing that these exceptions did not apply, Plaintiffs claim that the Defendants' unauthorized removal of Mr. Stein and forcible confinement of him within an ambulance violated his constitutional protections against unlawful detention, search and seizure of his person, and false imprisonment.

The validity of the health care proxy within the Steins' home also affects Mrs. Stein's own constitutional and assault claims. If Mrs. Stein was not authorized to act as Mr. Stein's health care agent, then it is undisputed that Mrs. Stein acted "intentionally and unreasonably" to obstruct emergency medical services personnel in the performance of their duties, in violation of New York State Penal Law §195.16. As such, Defendants would have been authorized to physically remove her from the bedroom. See, generally, Pl. Opp. Br. at 20-21. But if Mrs. Stein had a legal right to make medical decisions on Mr. Stein's behalf, then her attempt to obstruct Defendants from removing Mr. Stein without her consent was arguably not "unreasonable," and thus not a crime. As such, Defendants may not have been authorized to physically remove her from the room.

Under New York law, Mrs. Stein's authority to act as Mr. Stein's health care agent is governed by statute. New York Public Health Law § 2982 states:

> 1. Scope of authority. Subject to any express limitations in the health care proxy, an agent

shall have the authority to make any and all health care decisions on the principal's behalf that the principal could make. Such authority shall be subject to the provisions of section twenty-nine hundred eighty-nine of this article.

2. Decision-making standard. After consultation with a licensed physician, registered nurse, licensed psychologist, licensed master social worker, or a licensed clinical social worker, the agent shall make health care decisions: (a) in accordance with the principal's wishes, including the principal's religious and moral beliefs; or (b) if the principal's wishes are not reasonably known and cannot with reasonable diligence be ascertained, in accordance with the principal's best interests; provided, however, that if the principal's wishes regarding the administration of artificial nutrition and hydration are not reasonably known and cannot with reasonable diligence be ascertained, the agent shall not have the authority to make decisions regarding these measures.

Plaintiffs argue that, under subsection (1), Mrs. Stein had unlimited authority "to make any and all health care decisions on the principal's behalf that the principal could make." Defendants counter that, under subsection (2), Mrs. Stein's decision-making authority was circumscribed by the need to first consult with a medical professional, which Defendants argue means that she could only exert her authority within a hospital setting. Neither interpretation is persuasive.

Both parties' requested interpretations run afoul of three standard principles of statutory construction: (1) that all parts of a statute should be given effect; (2) that statutes should

not be construed so as to nullify any provision or render any term meaningless; and (3) that statutes should be construed in accordance with the plain meaning of the words used. See 97 N.Y. JUR. 2D STATUTES § 185; Orens v. Novello, 99 N.Y.2d 180, 185, 783 N.E.2d 492, 495 (N.Y. 2002). Plaintiffs' proffered interpretation would render subsection (2) a nullity, while Defendants' proffered interpretation would clearly deprive Mrs. Stein of her statutory authority "to make any and all health care decisions on the principal's behalf that the principal could make." New York Public Health Law § 2982(1). Defendants' proffered interpretation also poses an additional concern: it would have the Court read "hospital setting" where the actual text says only that a health care proxy need "consult[] with a licensed physician, registered nurse, licensed psychologist, licensed master social worker," without imposing any restrictions on where this "consultation" must take place. Furthermore, although Defendants argue that the Court should interpret § 2982 as New York's state agencies do, the interpretations that Defendants have brought to the Court's attention indisputably only concern "do not resuscitate" situations. See New York State Department of Health Memorandum 92-32, dated November 2, 1992; Bureau of EMS Policy Statement 99-10: Frequently Asked Questions re: DNR's, dated December 30, 1999; New York State EMT-Critical Care Curriculum. Thus, they have no applicability to health care proxies generally.

10

The interpretation of § 2982 appears to be a matter of first impression for the Court. The Court could locate no cases or other authority concerning whether § 2982 authorizes health care agents to make medical decisions outside of a hospital setting. Nevertheless, the Court believes that the language of § 2982 is unambiguous. By its plain words, § 2982(1) authorizes a duly-designated health care agent "to make any and all health care decisions on the principal's behalf that the principal could make." A principal can make health care decisions at any time, and anywhere. And principals can and do make decisions that, by their very nature, <u>cannot</u> be made in a hospital – such as whether to seek medical attention in the first place. Because the statute empowers health care agents "to make any and all decisions" that a principal can make, this means that health care agents <u>must</u> be able to make the kinds of decisions that do not take place in hospitals, and thus do not occur in hospital settings. Consequently, Defendants' claim that § 2982 is implicitly limited to hospital settings has no basis in the text. Plaintiffs are correct: § 2982 applies everywhere.

That being said, and contrary to Plaintiffs' claims, the rights conferred by § 2982(1) are not unlimited. Rather, they are expressly confined by the requirements imposed in § 2982(2). Specifically, before an agent can make a decision on the principal's behalf, the agent must "consult[]with a licensed

physician, registered nurse, licensed psychologist, licensed master social worker, or a licensed clinical social worker." But the statute imposes no temporal or physical limitation concerning where or when this "consultation" must take place. Nothing in the statute precludes the health care agent from engaging in this consultation by phone, or consulting with a "licensed physician, registered nurse, etc." who is not the principal's primary-care physician. Likewise, nothing in the statue indicates that this consultation has to be simultaneous with the agent's decision. Rather, the consultation could occur days, weeks or months before the agent makes the decision, and it could be based in the form of a conditional that then comes to pass (_i.e._, "if X happens, what should I do?"). Rather, the only restrictions that § 2982 imposes upon the proxy's authority are: (1) a procedural requirement that the agent first consult with one of the listed professionals before making a decision; and (2) a substantive requirement that the agent act in accord with the principal's wishes or, failing that, the principal's best interests. § 2982(2).

Applying this interpretation, Defendants have failed to establish – for purposes of this motion – that Mrs. Stein did not have Mr. Stein's authority to request a particular hospital. At most, Defendants have established that Mrs. Stein did not contact Mr. Stein's "primary care physician at any time on October 8, 2005." But the record is silent concerning whether: (I) Mrs. Stein

consulted with a different "licensed physician, registered nurse, licensed psychologist, licensed master social worker" concerning where to take Mr. Stein; or (II) Mrs. Stein consulted with Mr. Stein's primary care physician at some time <u>before</u> October 8, 2005, regarding what to do if Mr. Stein's condition deteriorated. Thus, for purposes of this motion, the Court must assume that Mrs. Stein possessed Mr. Stein's right to request a particular hospital.

Under New York law, however, Mr. Stein's right to request a particular hospital (and, thus, Mrs. Stein's right on Mr. Stein's behalf) was not unlimited. Under Policy Statement 98-15, Mr. Stein's hospital choice could be overridden "by state, regional or system/service protocol or the assessment by a certified EMS provider shows that complying with [Mr. Stein's] request would be injurious or cause further harm to [him]," with the EMT "fully document[ing]" the reasons for not complying with the request. But, for purposes of this motion, Defendants have failed to establish that either of those exceptions applied.

With respect to "state, regional or system/service protocol[s]," Defendants appear to direct the Court to Nassau Regional Medical Services Procedure II.A., dated July 1, 1999. This protocol states that "Patients who are critical or unstable must be transported to the nearest hospital emergency department!" But Defendants' Rule 56.1 Statement of Material Facts does not state that Mr. Stein was "critical or unstable." And, although

Defendants claim that his Prehospital Care Report indicated that he was "unstable," the Court can decipher nothing in that report that so represents.[2]

Defendants also implicitly point to the New York State EMT-B Basic Life Support Protocols, which state that "[p]atients who are a high priority must be transported to the nearest <u>appropriate</u> regionally approved hospital emergency department" (emphasis in original). But, again, Defendants' Local Rule 56.1 Statement nowhere describes Mr. Stein as "high priority." Nor does his Prehospital Care Report. Moreover, the EMT-B Basic Life Support Protocols expressly distinguish between patients who have to be taken to the "nearest <u>appropriate</u>" hospital (<u>i.e.</u>, "high priority" patients), and those who need to go to "the nearest hospital emergency department" (<u>i.e.</u>, those suffering from cardiac arrest, an unmanageable airway, or in a few other circumstances) – without the "appropriate" qualifier. Furthermore, at least for purposes of this motion, these Protocols arguably directed Defendants to take Mr. Stein to an "alternative destination" of his choice, because: (1) the Prehospital Care Report does not indicate that he suffered from a "major trauma"; and (2) Mr. Stein may have

_____

[2] Specifically, the report (Def. Ex. G) nowhere uses the word "unstable." And, although under "STATUS" the box marked "U" is checked, rather than "C," "P," or "S," Defendants do not specifically contend – much less evidence – that "U" stands for "unstable." And the Court cannot grant a party moving for summary judgment this kind of unsupported inference.

been "stable" during transport; or (3) NSUH may have been able to provide "specialty care" that Winthrop could not, given NSUH's familiarity with Mr. Stein's condition.

In addition, Defendants also fail to establish that an "assessment by a certified EMS provider shows that complying with [Mr. Stein's] request would be injurious or cause further harm to [him]," with the EMT "fully document[ing]" the reasons for not complying with the request. True, Defendant Diaz did evaluate Mr. Stein and determine that he should go to Winthrop. But Defendants nowhere state that he did so based upon a belief that a failure to honor Mrs. Stein's request "would be injurious or cause further harm" to Mr. Stein, or that Defendant Diaz "fully document[ed]" why Mrs. Stein's request was denied. Rather, if anything, the facts indicate that Defendant Diaz disregarded Mrs. Stein's request because he incorrectly believed that health care agents have no authority outside of a hospital setting. Def. Stmt. ¶ 12.

Accordingly, the Court cannot say as a matter of law that Defendants were authorized to remove Mr. Stein from his home and, against Mrs. Stein's wishes, transport him to Winthrop. Thus, Defendant County of Nassau is not entitled to summary judgment with respect to Plaintiffs' first four causes of action, and cause of action number 10.

II.  Did Defendants Have a Right to Physically Detain Mrs. Stein?

Defendants argue that Plaintiffs' fifth through ninth

causes of action (for violations of § 1983, Mrs. Stein's constitutional rights, and assault upon Mrs. Stein) fail because Mrs. Stein was violating New York State Penal Law § 195.16. This statute states, in relevant part, "A person is guilty of obstructing emergency medical services when he or she intentionally and unreasonably obstructs the efforts of any service, technician, personnel, system or unit specified in section three thousand one of the public health law in the performance of their duties." According to Defendants, because Mrs. Stein was in violation of this statute, Defendant Barthelson had probable cause to prevent her further violation of the statute by physically removing her from the scene and briefly detaining her. Def. Br. at 16-19. And, as a result, Defendants contend that no assault or violation of Mrs. Stein's constitutional rights occurred.

Plaintiffs respond that the statute does not prohibit all intentional interference with emergency medical personnel, but only "unreasonable" interference. And here, Plaintiffs argue that Mrs. Stein's obstruction was "reasonable," because she had a lawful right as Mr. Stein's health care agent to make health care decisions for him, and Defendants were attempting to wrongfully disregard that right by removing Mr. Stein to Winthrop without her consent.

Plaintiffs are correct. The statute clearly only prohibits "unreasonable" interference with emergency medical

personnel.  And, although there is apparently no case law interpreting § 195.16's "unreasonable[ness]" requirement, the Court is not prepared to effectively hold as a matter of law that Mrs. Stein acted "unreasonabl[y]" if: (1) she had a legal right, as her husband's health care agent, to decide where her husband got treated; (2) she obstructed the Individual Defendants in an attempt to enforce that legal right, and prevent her husband's potentially unlawful removal to Winthrop.  Nor is the Court prepared to say, as a matter of law, that Defendant Barthelson had "probable cause" to remove Mrs. Stein from the room and temporarily detain her, based upon Defendant Barthelson's apparently incorrect belief that health care agents have no authority outside of a hospital setting, and that Mrs. Stein was thus acting unreasonably in obstructing the emergency medical personnel.

Defendants' summary judgment motion presents no alternative theories to justify Defendant Barthelson's conduct towards Mrs. Stein.  Accordingly, Defendant County of Nassau is not entitled to summary judgment with respect to causes of action 5 through 9.

III.  <u>Were Defendants Negligent?</u>

To establish a negligence claim, Plaintiffs must show: (1) the existence of a duty; (2) a breach of that duty; and (3) that such breach was a proximate cause of the events which produced the injury.  <u>See</u> <u>Lapidus v. State</u>, 57 A.D.3d 83, 92-93, 866

17

N.Y.S.2d 711, 719 (2d Dep't 2008). Defendants argue that Plaintiffs cannot establish that they breached any duty by taking Mr. Stein to Winthrop instead of NSUH. Plaintiffs respond that Defendants had a legal duty to honor Mrs. Stein's status as Mr. Stein's health care agent, and that Defendants were negligent in failing to do so and – indeed – failing to even examine the health care proxy document to determine its validity.

Once again, Defendants have failed to show that Mrs. Stein has no claim as a matter of law. Provided that Mrs. Stein consulted with a "licensed physician, registered nurse, licensed psychologist, licensed master social worker" (a fact which must be decided at trial) she had a legal right to request that Mr. Stein receive treatment at NSUH. And Defendants had a legal duty to respect that request, unless contravened by a "state, regional or system/service protocol" or an "assessment by a certified EMS provider" that complying with the request "would be injurious or cause further harm" to Mr. Stein. Policy Statement 98-15. And, again, at least for purposes of this motion, Defendants have failed to establish that either of these exceptions applied. Thus, material issues of fact exist concerning whether Defendants had a legal duty to respect Mrs. Stein's instructions regarding her husband's treatment. And, if such a duty existed, it is uncontested that Defendants breached it, and that this breach proximately resulted in the constitutional harms Mr. Stein

18

suffered. Accordingly, Defendant County of Nassau is not entitled to summary judgment with respect to the eleventh cause of action.

IV. <u>Do the Individual Defendants Possess Qualified Immunity</u>?

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1945, __ L. Ed. 2d __ (2009). To establish qualified immunity, defendants must "show either that their conduct did not violate clearly established rights of which a reasonable person would have known, or that it was objectively reasonable to believe that [their] acts did not violate these clearly established rights." <u>Prue v. City of Syracuse</u>, 26 F.3d 14, 17 (2d Cir. 1994).

Here, Defendants argue that the Individual Defendants are entitled to qualified immunity because they acted based upon "the objectively reasonable belief that the acts did not violate [Plaintiffs'] rights." Def. Br. at 23. In this regard, Defendants represent that the Individual Defendants acted in accordance with their training, which instructed them to "ignore[]" health care proxies outside of a hospital setting. Def. Br. at 23. The Plaintiffs concur, as Plaintiffs' Local Rule 56.1 Statement represents that "Defendants were taught by Nassau County not to honor Health Care Proxies." Pl. Stmt. ¶ 20.

Defendants misstate the relevant inquiry. The fact that

the Individual Defendants acted in accordance with their training does not, by itself, afford them qualified immunity. <u>See</u> <u>Pappas v. New Haven Police Dept.</u>, 278 F. Supp. 2d 296, 304 (D. Conn. 2003); <u>Sampson v. City of Schenectady</u>, 160 F. Supp. 2d 336, 350 (N.D.N.Y. 2001). Rather, it affords them qualified immunity <u>only</u> if the training they received was not "contrary to a decided body of case law." <u>Pappas</u>, 278 F. Supp. 2d at 304; <u>Sampson</u>, 160 F. Supp. 2d at 350. Nevertheless, the Individual Defendants prevail on this ground. The parties do not dispute that the Court's interpretation of § 2982 is a matter of first impression. Plaintiffs point to no "decided body of case law," and the Court's own research could find none, holding that emergency responders must honor health care proxies outside of a hospital setting. Therefore, in refusing to honor Mrs. Stein's status as Mr. Stein's health care agent, the Individual Defendants did not violate any "clearly established law," and are thus entitled to qualified immunity. <u>See</u> <u>Safford Unified School Dist. No. 1 v. Redding</u>, __ U.S. __, __ S. Ct. __, __ L. Ed. 2d. __, 2009 WL 1789472, *9 (U.S. June 25, 2009).

Consequently, Defendants' motion for summary judgment is GRANTED in part so as to GRANT summary judgment to the Individual Defendants on qualified immunity grounds. Plaintiffs may proceed to trial only against the County of Nassau.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Specifically, summary judgment is GRANTED with respect to all claims against the Individual Defendants, but DENIED with respect to the claims brought against the County of Nassau.


SO ORDERED


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           July  23 , 2009